USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-27-12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILSON GARCON,

                         Plaintiff,

- against -

STARWOOD HOTEL AND RESORTS
WORLDWIDE, INC.,

                         Defendant.

**REPORT AND RECOMMENDATION**

**10 Civ. 5720 (PAC) (RLE)**

**To the HONORABLE PAUL A. CROTTY, U.S.D.J.:**

## I. INTRODUCTION

Wilson Garcon, who proceeded *pro se* for the majority of this suit but who has since retained counsel, brings this action against Defendant Starwood Hotels & Resorts Worldwide, Inc. ("Starwood"), asserting claims under Title VII of the Civil Rights Act of 1964; the Age Discrimination in Employment Act ("ADEA"); the Americans with Disabilities Act ("ADA"); New York State Human Rights Law ("NYSHRL"); and the New York City Human Rights Law ("CHR"). Garcon also alleges, in part, that Starwood retaliated against him for a complaint he filed against them with the New York State Department of Human Rights ("NYDHR") and the Equal Employment Opportunity Commission ("EEOC"). Starwood moves to dismiss the Complaint pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. For the reasons that follow, I recommend that Defendant's motion be **GRANTED**.

## II. BACKGROUND

In December 2006, Wilson Garcon was hired as a custodial worker by the Westin New York Hotel at Times Square ("Hotel"), whose corporate parent is Starwood. (Decl. of Nancy Kiska ("Kiska Decl.")), ¶ 3). Garcon was represented by the New York Hotel and Motel Trades

Council and Union Local 6 ("Union"). *Id.* at ¶ 5. All employment matters between hotel employees and hotel management that are part of the Union are governed by a collective bargaining agreement ("CBA"), which contains an anti-discrimination clause, a seniority provision, and a grievance and arbitration provision. *Id.* at ¶ 6, Ex. H, Art. 23 (seniority), Art. 25 (No Discrimination), and Art. 26 (Complaints, Grievances, and Arbitration).

In March 2008, Garcon applied for transfer to a steward position at the Hotel. (Kiska Decl. ¶ 8, Ex. D). His application was accepted and he began his assignment as a steward on the night shift from 5:00 p.m. to 12:30 a.m. *Id.* at ¶ 9, Ex. E. Soon after, Garcon was re-assigned to the overnight shift. (Whitaker Decl. ¶ 8). Garcon was near the bottom (number 25 of 27) of the seniority system for stewards. (Kiska Decl. ¶ 12, Ex. H at ¶ 11(C)).

On February 2, 2009, Garcon was injured while working at the Hotel. (Comp. 5). Following the injury, he was called into the office of his immediate supervisor, Chris Unger, who allegedly called Garcon "dumb" and said that Garcon's religion was "voodoo". (Compl. 5). Garcon asked to go to the hospital but Unger refused. *Id.* According to Garcon, Unger then threatened to terminate him if he called the police. *Id.* Garcon subsequently filed a workers' compensation claim, which is pending before the New York State Workers' Compensation Board. (Kiska Decl. ¶ 27; Denner Decl., Ex. C, 15:11-18).

On March 13, 2009, Unger issued a disciplinary warning to Garcon for not appearing for work on three separate occasions and for being tardy for work on three other occasions. (Kiska Decl. ¶ 22, Ex. K). Garcon alleges that Unger caused his last tardiness when he stopped him in the hallway to talk, which had delayed him from clocking in. (Pl. Decl. ¶ 14). Garcon also alleges that his absences were caused by a pre-existing heart condition and were excused, pursuant to the Hotel's Attendance Policy. (Pl. Decl., ¶ 13).

2

On March 21, 2009, Garcon was involved in a dispute with a co-worker, Orlando Santiago. (Kiska Decl. ¶ 29; Decl. of Keya Denner ("Denner Decl."), Ex. A, at ¶ 5). Garcon claims that Santiago assaulted him during the altercation. (Compl. 6). This allegation was investigated by the Human Resources Department ("HR") and the Hotel interviewed an alleged eyewitness to the event, Cheik Soumano. (Kiska Decl. ¶ 30). Soumano, however, stated that he did not see Santiago strike Garcon. *Id.* at ¶ 32. Both Garcon and Santiago were issued disciplinary warnings pursuant to Hotel policy. *Id.* at ¶ 30, Ex. O. Soumano is now deceased. *Id.* at ¶ 34.

On April 17, 2009, Garcon gave HR a doctor's note, which stated that he should not work the overnight shift because of the side effects that might result from the medication prescribed for his heart condition. (Kiska Decl. ¶ 38; Denner Decl. Ex. A, ¶ 29). The Hotel informed Garcon that his request to transfer his shift could not be accommodated because of the seniority provision in the CBA. (Kiska Decl. ¶ 40, Ex. S; Denner Decl., Ex. D, 17:8-18). Following the meeting with HR, Garcon stopped reporting to work. (Kiska Decl. ¶ 43, Ex. T). The Hotel sent Garcon a letter stating that job abandonment could be grounds for his termination. (Kiska Decl., ¶ 44, Ex. U).

On May 4, 2009, Garcon filed a complaint ("DHR Complaint") with the NYDHR and the EEOC. (Kiska Decl. ¶ 45, Ex. V; Denner Decl. Ex. A, ¶ 19). Garcon alleged in the DHR Complaint that the Hotel had engaged in racial and national origin discrimination in that Unger had issued disciplinary warnings for attendance and because the Hotel failed to take disciplinary action against Santiago. One day later, Garcon met again with HR to discuss his request for transferring to an earlier shift. (Kiska Decl. ¶ 53). Garcon was told once again that his request could not be accommodated because of the seniority provision.

The NYDHR and EEOC issued a "no probable cause" finding to the DHR Complaint. (Kiska Decl. ¶ 51, Ex. X), and on June 25, 2009, Garcon filed another complaint ("Second DHR Complaint") with these agencies. (Kiska Decl. ¶ 63, Ex. DD; Denner Decl. Ex. A, ¶ 21). He alleged that the Hotel was retaliating against him for filing the DHR Complaint by refusing his request to transfer shifts and for laying him off from work. The NYDHR and EEOC issued a "no probable cause" finding to the Second DHR Complaint, (Kiska Decl. ¶ 65, Ex. FF), and the EEOC issued a right to sue letter to Garcon.

In March 2010, Garcon spoke to Nancy Kiska on the telephone, asking to return to work for the Hotel. (Kiska Decl. ¶ 70, Ex. II). He was again assigned to the overnight shift. (*Id.* ¶ 70, Ex. JJ). Garcon did not report to work following his agreement with Kiska, (*Id.* ¶ 72), and was terminated for failing to report to work. (*Id.* ¶ 73, Ex. LL).

In August 2010, after a discussion between a Union representative and Anne Powers, the Director of HR for the Hotel, the Hotel offered Garcon an unconditional reinstatement as a steward on the night shift. (Anne Power Decl. ¶ 7) ("Power Decl."). Garcon, however, was almost immediately placed on medical leave and has not reported back to work since his acceptance of the offer. (Power Decl., ¶ 15).

Garcon has proceeded *pro se* for the majority of this suit but has recently retained counsel after Starwood filed its motion for summary judgment.

### III. DISCUSSION

A. **Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may grant a motion for summary judgment if it determines that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

4

Under this legal standard, summary judgment is proper if "viewing the record in the light most favorable to the nonmoving party, the evidence offered demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Pension Benefit Guar. Corp. v. LTV Corp.*, 875 F.2d 1008, 1015 (2d. Cir. 1989) (internal quotations omitted). In making a determination for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are factual issues to be tried." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986). An issue of fact is deemed "genuine" if it provides a basis for "a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If no reasonable trier of fact could find in favor of the nonmoving party, then summary judgment should be granted. *H.L. Hayden Co. Of New York, Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1011 (2d Cir. 1989). Such a grant is appropriate to fulfill the purpose of summary judgment, which is to dispose of "meritless claims before becoming entrenched in a frivolous and costly trial." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party may meet this burden by demonstrating that there is a lack of evidence to support the nonmoving party's legal claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the initial burden of demonstrating the absence of any genuine issue of material fact is satisfied by the nonmoving party, then the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

In cases involving discrimination, summary judgment is a drastic provisional remedy that should only be granted with caution. *See Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 100,

103 (2d Cir. 1989); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985); *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir. 1984). This is because in discrimination cases, evidence directly supporting a claim of intentional discrimination is rarely available. *Gallo v. Prudential Residential Estate Serv. Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994). "[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Desir v. City of New York*, 453 Fed. Appx. 30, 33 (2d Cir. 2011).

Nonetheless, summary judgment remains appropriate in some discrimination cases. *See Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."). The court's task at the summary judgment motion stage is carefully limited to discerning whether there are any genuine issues of material fact to be tried and not to decide the importance of such facts. *Gallo*, 22 F.3d at 1224.

**B.     Garcon's ADA and ADEA Claims**

   **1.     This Court Lacks Jurisdiction over Garcon's ADEA Claim**

Starwood asserts that Garcon's ADA and ADEA claims are barred because Garcon has failed to exhaust the administrative remedies required by the statutory schemes. As a general matter, Starwood is correct that administrative exhaustion is required. As a precondition to filing ADA and ADEA claims in federal court, a plaintiff is required to pursue available state administrative remedies and to file a timely complaint with the EEOC or an administrative agency. *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991); *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000); *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993). However, where a plaintiff has filed an administrative claim alleging some form of discrimination, he may satisfy the exhaustion requirement for other claims not

specifically alleged in the administrative complaint if those claims are "sufficiently related" to the allegations in the complaint that was filed. *Butts*, 990 F.2d at 1402. This exception of "loose pleadings" recognizes that where a plaintiff has filled out an EEOC form, oftentimes without the benefit of counsel, and the claim falls within the "scope of the EEOC investigation," the court should allow such claims to be heard. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001); *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir. 1978); *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir. 1979), *rev'd on other grounds*, 447 U.S. 807 (1980).

In determining whether claims are sufficiently related, the focus should be "on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003). "It is the substance of the charge and not its label that controls." *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998). Applying these principles, the Court finds that Garcon's ADEA claim is not exhausted. The NYDHR investigated Garcon's race and national origin claim concerning the issuance of the disciplinary warnings and Starwood's refusal to reassign Garcon to his original shift. This investigation lacked any factual basis to notify Starwood that an ADEA claim could arise. *See Clements v. St. Vincent's Hosp. and Med. Ctr. of New York*, 919 F. Supp. 161, 163 (S.D.N.Y. 1996). In Garcon's case, there did not exist any facts in either administrative complaint to warn Starwood of the potentiality of an ADEA claim.

### 2. Garcon's ADA Claim is sufficiently related to the conduct in the NYDHR charge to constitute exhaustion but he fails to state a prima facie case

The presence of Garcon's medical condition as the reason for his application to transfer should have alerted Starwood to the potentiality of an ADA claim, even if it was not specifically

alleged. Garcon stated that Starwood's failure to transfer him to an earlier shift violated his doctor's recommendations because of his pre-existing heart condition. (Compl. 15, 17).

Starwood argues, alternatively, that Garcon's ADA claim must fail because he cannot carry his burden of demonstrating a *prima facie* case of disability discrimination. On this alternative basis, Starwood prevails. In analyzing a discriminatory charge under the ADA, the court applies the burden-shifting established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973), where the plaintiff bears the initial burden of establishing by a preponderance of the evidence a *prima facie* case of discrimination. The burden of production then shifts to the defendant, which must offer through the introduction of admissible evidence a nondiscriminatory reason for its actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action. *Id.* Plaintiff must then show that the proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence, or by reliance on the evidence comprising the *prima facie* case. *Id.*

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must initially show by a preponderance of the evidence that (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability. *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir. 1998). The parties contest two issues: (1) whether Garcon could perform the essential functions of the job and (2) whether Garcon's request to be transferred to an earlier shift was reasonable under the ADA.

Starwood has offered little evidence in claiming that Garcon could not perform the

essential functions of the steward position. It relies exclusively on Garcon's testimony that the job was difficult and that Garcon failed to return to work in October 2010 after Starwood offered him the night shift. This is an incorrect application of the essential functions test. Essential functions are defined under EEOC regulations to mean the "'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal.'" *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997) (29 C.F.R. § 1630.2(n)(1) (1996)). Here, Starwood is not challenging Garcon's capacity to perform as a steward. Indeed, by offering Garcon reinstatement in October 2010, it has undermined any claim that he could not perform the essential functions of his steward position.

Starwood argues nevertheless that under the framework of *McDonnell Douglas*, it has met its burden of showing that Garcon's requests for transfer were denied based on nondiscriminatory reasons of the CBA seniority provision. The Supreme Court has held that an employer's showing that a requested accommodation conflicts with seniority rules is ordinarily sufficient to show, as a matter of law, that an "accommodation" is not reasonable. *US Airways v. Barnett*, 535 U.S. 391, 392, (2002). However, the plaintiff may show that special circumstances warrant a finding that, despite the seniority system's presence, the requested accommodation is reasonable on the particular facts. *Id.* ("The plaintiff might show, for example, that the employer, having retained the right to change the system unilaterally, exercises the right fairly frequently, reducing employee expectations that the system will be followed — to the point where the requested accommodation will not likely make a difference.").

Garcon, in fact, argues that Starwood made exceptions to its seniority system, but he has not alleged any facts to support the argument. He relies exclusively on his assignments to temporarily fill in for shifts that had opened due to illness or absence. Pursuant to the CBA,

steward schedules are determined by job classification seniority, which means that employees choose their shift hours based on the amount of time they have been employed by the Hotel. Starwood has presented evidence showing that Garcon was placed in the overnight shift pursuant to the policies of the CBA and that no positions were available during his employment that would have allowed him to change shifts given his junior status under the CBA. Furthermore, Starwood has also established that when a night shift became available, Garcon was offered the position according to the seniority system. Starwood has provided uncontroverted evidence to support that Garcon's transfer to the overnight shift and the subsequent denials of his requests to transfer were made pursuant to a bona fide seniority system. Garcon therefore does not meet his burden to establish a prima facie violation of the ADA. I recommend that the Defendants' motion be **GRANTED** with respect to the ADA claim.

### C. Retaliation Claim

A claim of retaliation is analyzed under the same three-part burden shifting analysis in *McDonnell Douglas.* In order to make out a *prima facie* case of retaliation, a plaintiff must show by a preponderance of the evidence (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *See Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991). Moreover, "the burden that must be met by an employment discrimination plaintiff to survive a summary judgment motion 'at the prima facie stage is de minim[i]s.'" *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

Here, the primary dispute between Starwood and Garcon is the seniority provision. Garcon argues that although Starwood has articulated a reason for its decision not to transfer him to his desired shift, that proffered reason is pretextual. In order to support his allegation that

Starwood's reasoning is pretextual, Garcon offers only that his first transfer, from that of the night shift to the overnight shift, should be sufficient to establish that Starwood had discriminated against him. Starwood has produced evidence showing that Garcon's initial transfer was dictated by the seniority provisions of the CBA. Garcon has failed to allege any facts that might overcome Starwood's nondiscriminatory showing of their refusal to transfer. Accordingly, I recommend that Starwood's motion for summary judgment on Garcon's claim of retaliation be **GRANTED**.

### D. Title VII Claim

Title VII provides that "it shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Hostile work environment claims are analyzed within the three-part burden-shifting framework laid out by *McDonnell Douglas*. *See Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001); *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004). Although both Garcon and Starwood raise the issues of a hostile work environment and an adverse job action, Gacron primary presents evidence predicated upon a hostile work environment claim.

The Second Circuit has noted that "[a]n employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent." *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir.1991). "A victim of discrimination is therefore seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence." *Id*. Thus, the existence of direct evidence in a case is "a rare exception." *Bateman v. Project Hospitality, Inc.*, No. 07 Civ. 2085

11

(RRM) (RML), 2009 WL 3232856, at *8 (E.D.N.Y. Sept. 30, 2009); *see also Sulehria v. City of New York*, 670 F. Supp. 2d 288, 305 (S.D.N.Y. 2009).

Proving the existence of a hostile work environment requires a plaintiff to first show "that the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive work environment." *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000). A single incident of harassment is normally insufficient to establish a hostile work environment, *see id.*, but in "limited circumstance[s] a plaintiff can satisfy the first prong by pointing to a single, acute incident of abuse." *Wright v. Monroe Comty Hosp.*, No. 11 Civ. 3520, 2012 WL 3711743, *1 (2d Cir. Aug. 29, 2012). The single instance must be extraordinarily severe, *see Howley*, 217 F.3d at 153, or "constitute an intolerable alteration of the plaintiff's working conditions, so as to substantially interfere with or impair his ability to do his job." *Wright*, 2012 WL 3711743, at *1.

The particular incident requires showing both "objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Feingold*, 366 F.3d 138 at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Among the factors the court considers are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance." *Harris*, 510 U.S. at 21. To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse. *Harris*, 510 U.S. at 23. The task is to "obtain a realistic view of the work environment." *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 441 (2d Cir. 1999). The

Second Circuit has recognized that threats or insinuations can support a hostile work environment claim. *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 607 (2d Cir. 2006) (where supervisor's sexual threats and insinuations changed the quality of the employee's work environment).

The second prong of a hostile work environment requires a plaintiff to "show that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Howley*, 217 F.3d at 154. "[A]n employer is presumed absolutely liable when the harassment is perpetrated by the victim's supervisor." *Richardson*, 180 F.3d at 441 (quoting *Burlington Industries v. Ellerth*, 524 U.S. 742 (1998)).

The brunt of Garcon's hostile environment claims stems from the February 2009 incident. Garcon allegedly sustained sufficient injuries after falling down a flight of stairs at work. Shortly after the accident, Garcon was direct by Chris Unger, his supervisor, to fill out an incident report, to which Garcon responded that he was unable to do so because he did not know how to write in English. Thereafter, Unger asked Garcon where he was from. After Garcon informed Unger that he was from Haiti, Garcon alleges that Unger told him he was "dumb" and that his religion was "voodoo." Garcon was unable to fill out an incident report because Unger refused to assist him. Garcon further alleges that Unger refused to allow him to go to the hospital after he had been injured and threatened him with termination if he called the police or left work. Garcon does not, however, allege a pattern of comments and does not allege multiple comments over time.

The Second Circuit recognizes that a hostile work environment can be effectuated by a single event if the event in question is so severe as to alter or hinder the plaintiff's ability to perform his or her duties. *See Howley*, 217 F.3d at 153-56 (held that a subordinate firefighter's abusive, gender-based obscenities directed at female lieutenant in the presence of other

13

subordinates affected her ability to perform her duties as a superior officer). Garcon does not inform the Court how his later interactions with Ungar encumbered his work. He continued to work after his encounter with Ungar on February 2, 2009, and after two additional incidents that took place on March 13, 2009, and March 21, 2009. Garcon does not present any facts illustrating how the incident affected his ability to perform his duties. He does not allege a pattern of comments nor that multiple comments took place over time.

A hostile work environment claim under Title VII must allege facts that give a sense of the actual work environment by requiring evidence of a plaintiff's inability to perform his or her duties because of the incident in question. Garcon does not satisfy this burden. Therefore, I recommend that Starwood's motion for summary judgment on Garcon's claim of hostile work environment be **GRANTED**.

E.  **The Court Should Not Exercise Supplemental Jurisdiction Over the NYHRL and CHRL Claims**

Starwood contends that Garcon's NYHRL and CHRL claims are barred under the election of remedies doctrine, and must be dismissed based upon the "no probable cause" findings issued by the NYDHR. The Court agrees. Under N.Y. Exec. Law § 297(9) and N.Y.C. Admin. Code § 8-502(a), an individual claiming to be aggrieved by an unlawful discriminatory practice may have a cause of action unless that individual has filed a complaint with local or city commission on human rights.[1] Garcon contends that his claim is not barred under the provision because the factual conduct dictating the administrative complaint and the federal based claim does not arise out of the same nexus of fact. The facts, however, need not be perfectly aligned so long as the

---

[1] "Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damage . . . and such other remedies as may be appropriate . . . unless such person has filed a complaint hereunder or with any local commission on human rights . . . ." N.Y. Exec. Law. § 297(9).

same facts are substantially involved. *Benjamin v. N.Y. City Dep't of Health*, 57 AD. 3d 403 (1st Dep't 2008).

In applying supplemental jurisdiction, federal courts are bound to apply state substantive law to a state claim, including any restrictions set by the state on whether the plaintiff may bring the court action regarding the claim. If the state courts would not recognize the plaintiff's right to bring the state claim in state court, then the federal courts must follow the state's jurisdictional determination and not allow the claim to be appended to a federal law claim in federal court. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Van Gemert v. Boeing Co.*, 553 F.2d 812, 813 (2d Cir. 1977); *Rounseville v. Zahl*, 13 F.3d 625, 629 n. 1 (2d Cir. 1994). "'By the terms of the statute and code, respectively, the NYHRL and CHRL claims, once brought before the NYSDHR may not be brought again as a plenary action in another court.'" *Fleury v. New York City Transit Authority,* 160 Fed. Appx. 34, 37 (2d Cir. 2005) (internal citations omitted); *see Moodie v. Federal Reserve Bank of New York*, 58 F.3d 879, 882 (2d Cir. 1995); *York v. Assoc. of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002). Once a plaintiff brings a case before the NYSDHR, he or she may appeal only to the New York State Supreme Court. N.Y. Exec. Law § 298. The plaintiff may not attempt to relitigate the claim in the United States District Court. *York,* 286 F.3d at 127.

The single exception to the mutually exclusive nature of the election of remedies doctrine arises when a complaint is dismissed for "administrative convenience." Executive Law § 279(9); *Moodie,* 58 F.3d at 883. Once an administrative complaint is dismissed on the grounds of convenience, the election of remedies barrier is removed from the state action and through supplemental jurisdiction, from the federal action as well. *Promisel v. First American Artificial Flowers, Inc.,* 943 F.2d 251, 257 (2d Cir. 1991). "Administrative convenience" has been

15

interpreted as the dismissal of the complaint by the administrative agency with "little or no investigation of the plaintiff's complaint." *Giuntoli v. Garvin Gaybutler Corp.*, 726 F. Supp. 494, 495 (S.D.N.Y. 1989). Alternatively, "administrative convenience" has also been determined when the administrative agency has determined that processing the complaint will not advance the State's human rights goals. *River v. Standard & Poor's Corp.*, 764 F. Supp. 54, 55 (S.D.N.Y. 1991).

It is undisputed that Garcon brought a complaint before the NYSDHR in May 2009 and again in June 2009. The gravamen of both complaints was racial and national origin discrimination based on the issuance of Unger's disciplinary warnings and the altercation with Santiago, as well as a claim of retaliation for filing the first complaint under Article 15 of New York Human Rights Law. There is no indication that these complaints were dismissed on the grounds of administrative convenience. Indeed, it seems that the NYDHR conducted a thorough investigation before dismissing both complaints based upon "no probable cause." Garcon contends that his claim is not barred under the provision because the factual conduct dictating the administrative complaint and the federal based claim is not exact. However, Garcon himself cites to a state court ruling that not all facts need be perfectly identical, so long as the same facts are substantially involved, in order to appropriately invoke the election of remedies doctrine. *See, supra, Benjamin*, 57 A.D.3d 403. If Garcon wishes to appeal the two administrative findings, he must do so to the New York State Supreme Court. The Court finds that Starwood's motion for summary judgment on Garcon's state based NYSHRL and city based CHRL claims have merit and I recommend the motion be **GRANTED**.

F.   **Judicial Estoppel and Contradictory Facts**

Starwood asks the Court to bar Garcon's discrimination claims under the doctrine of judicial estoppel or, alternatively, dismiss Garcon's claims because he has asserted contradictory facts. The Court finds no basis to do so.

The doctrine of judicial estoppel exists to serve two objectives: preserving the sanctity of the oath by requiring consistency in sworn positions and protecting judicial integrity by avoiding inconsistent results in two proceedings. *Bates v. Long Island R.R.*, 997 F.2d 1028, 1038 (2d Cir. 1993), *cert. denied*, 510 U.S. 992 (1993). Courts that choose to apply the doctrine of judicial estoppel do so only with caution. *See Mohamed v. Marriott Intern., Inc.*, 944 F. Supp. 277, 280 (S.D.N.Y. 1996) (determining that estoppel does not bar plaintiff's ADA claim merely because he received Social Security Disability Insurance benefits); *Mishkin v. Peat, Marwick, Mitchell & Co.*, No. 86 Civ. 4301, 1988 WL 391648, *1 (S.D.N.Y. August 22, 1990) (finding estoppel unwarranted because no judgment was entered based on prior position). Typically, judicial estoppel will only apply if: a party's later position is "clearly inconsistent" with its earlier position; the party's former position has been adopted in some way by the court in the earlier proceeding; and the party asserting the two positions would derive an unfair advantage against the party seeking estoppel. *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010). "If the statements can be reconciled there is no occasion to apply an estoppel." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72–3 (2d Cir. 1997).

The issue before the Court is whether the position adopted by the administrative proceedings was necessarily inconsistent with the discrimination claims that Garcon is now asserting. Starwood argues that Garcon was unequivocal during the workers' compensation proceedings that his reason for not returning to work was due to the injuries he had sustained as a

17

result of the 2009 injury. However, Garcon's position was not "clearly inconsistent" during the workers' compensation proceeding. *See Mohamed,* 944 F. Supp. at 283 (holding that plaintiff's assertion of inability to work for SSDI is not necessarily inconsistent with his claim to be capable of performing the essential functions of the job from which he was discharged). Garcon did not affirmatively take the position that he was not going to work *solely* because he fell down while working for the Hotel. *See Simon,* 128 F.3d at 72. Furthermore, if Unger discriminated against Garcon, it would not be unfair to Starwood to allow Garcon to allege facts that are necessary to establish a viable discrimination claim. The intent of Title VII is to protect employees from discrimination by their employers and to encourage claims brought by such employees, not to force these same employees to choose between a viable workers' compensation claim and a discriminatory action.

Starwood contends that this Court should grant summary judgment because Garcon's allegations are so contradictory that no reasonable jury could find Garcon credible. However, "assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir. 1996); *Hayes v. N.Y. City Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir.1996) ("In applying the summary judgment standard, the court should not weigh evidence or assess the credibility of witnesses."); *United States v. Rem,* 38 F.3d 634, 644 (2d Cir.1994) (same). This is not to suggest that the district court cannot grant a motion for summary judgment if the record lacks any allegations that support the plaintiff's claim. As then Judge Sotomayor stated in *Pico,* "when the facts alleged are so contradictory that doubt is cast upon their plausibility, [the court may] pierce the veil of the complaint's factual allegations . . . and dismiss the claim." *Aziz Zarif Shabazz v. Pico,* 994 F. Supp. 460, 470 (S.D.N.Y.1998) (internal quotation marks omitted). Such a

contradiction does not exist in this case. In conjunction with a long history of allowing *pro se* litigants to proceed liberally, the Court does not find that the record is devoid of any allegation that could possibly entitle Garcon to relief. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); see also *Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003); *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

## IV. CONCLUSION

In conclusion, I recommend that Starwood's motion for summary judgment be **GRANTED.**

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 735, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: September 27, 2012**
**New York, New York**

**Respectfully Submitted,**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

19

Copies of this Report and Recommendation were sent to:

<u>Attorney for Plaintiff</u>
Maiaklovsky Preval
347 Fifth Avenue
Suite 1402
New York, NY 10150


<u>Attorney for Respondent</u>
Norris, McLaughlin & Marcus, P.A.
David E. Cassidy, Esq.
Keya C. Denner, Esq.
875 Third Avenue
18th Floor
New York, NY 10022